IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

DARNELL CARLTON BOUIE,

        Petitioner,

v.                                     **CIVIL ACTION NO. 3:21-CV-159**
                                     **(GROH)**

DONNIE AMES,

        Respondent.

## SECOND REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This case was initiated on September 29, 2021, when the Petitioner filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in the Southern District of West Virginia, case number 2:21-CV-543.  ECF No. 2.[1]  On October 4, 2021, the case was transferred to this district.  ECF Nos. 5, 6.  Petitioner paid the $5.00 filing fee on November 16, 2021.  ECF No. 13.  Petitioner is currently an inmate at the Mount Olive Correctional Complex in Mount Olive, West Virginia, whose next parole hearing is October 5, 2028.[2]

A report and recommendation was filed, but the District Court declined to adopt the same, and recommitted this matter to the undersigned for a second report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure (LR PL P) 2, et

---

[1]  All ECF references herein are in the instant case, 3:21-CV-159, unless otherwise noted.

[2]  See West Virginia Division of Corrections and Rehabilitation Offender Search for Prisons, https://apps.wv.gov/ois/offendersearch/doc

seq., and 28 U.S.C. §§ 1915(e) and 1915(A).  ECF Nos. 39, 42.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   Petitioner's State Conviction, Sentence and Direct Appeal

### 1.  Conviction and Sentence in Harrison County Circuit Court

On May 7, 2013, Petitioner was charged in Harrison County, West Virginia Circuit Court in an indictment returned in case number 13-F-76-3.  He was charged in Count One with first degree murder, and in Count Two with conspiracy to commit burglary. ECF No. 24-1, at 1, Docket Entry 1.

On March 21, 2014, a Harrison County jury found Petitioner guilty of both counts of the indictment.  ECF Nos. 24-6 at 90; 24-7 at 3 – 4.  Petitioner was sentenced on May 16, 2014, to consecutive terms of: (1) life with a recommendation of mercy for Count 1; and (2) to not less than one nor more than five years for Count 2.[3]  ECF No. 24-8.

### 2.  Appeal to the West Virginia Supreme Court of Appeals

Petitioner filed an appeal in the West Virginia Supreme Court of Appeals in that court's docket-number 14-0639.  ECF Nos. 2 at 2; 2-1; State v. Bouie, 235 W.Va. 709, 776 S.E.2d 606 (2015).  Petitioner raised five grounds in his appeal and alleged reversible error because the circuit court: (1) permitted the admission of the co-defendant's confession to a third party; (2) permitted the admission of statements allegedly made by Petitioner to the investigating officer; (3) permitted the admission of the Petitioner's jail phone calls; (4) permitted the admission of exemplar footwear evidence and attendant lay opinion testimony of the investigating officer; and (5) denied Petitioner's Motion for

---

[3]  Petitioner's effective date of sentence for Count 1 was October 5, 2012. ECF No. 24-8 at 4.  His effective date of sentence for Count 2 was "to begin upon completion of [the] term of imprisonment imposed with regard to Count 1."  Id.

Judgment of Acquittal and Motion for New Trial based on Petitioner's claim of insufficiency of evidence.  ECF No. 2 at 2; 235 W.Va. at 716 – 723, 776 S.E.2d at 613 – 620.   By opinion decided June 16, 2015, the West Virginia Supreme Court of Appeals affirmed the circuit court's judgment.  State v. Bouie, 235 W.Va. 709, 776 S.E.2d 606 (2015).

### B.      Petitioner's State Habeas Corpus Petitions

### 1.      Habeas Petition filed in Harrison County Circuit Court

Petitioner, acting *pro se*, sought Habeas Corpus relief in Harrison County, West Virginia, Circuit Court case number 15-C-433, filed on October 27, 2015.  ECF No. 24-15 at 6.  The petition was amended by counsel on August 9, 2018.  Id. at 7.  The amended petition alleged six grounds for relief:

(1) Prejudicial pre-trial publicity;

(2) Ineffective assistance of counsel;

(3) Constitutional errors in evidentiary rulings;

(4) Instructions to the jury;

(5) Sufficiency of evidence; and

(6) Question of actual guilt.

Id. at 5.  The circuit court denied Petitioner relief by order entered on July 31, 2020.  ECF No. 24-15.  The order states that "[t]he Court has concluded that the hearing conducted in this matter was an Omnibus Hearing.  Therefore, the Petitioner has waived and is prevented from asserting any further grounds in a future Petition for Writ of Habeas Corpus."  Id. at 18.

###### 2.      Appeal to West Virginia Supreme Court of Appeals

Petitioner appealed the denial of habeas relief in the circuit court to the Supreme Court of Appeals of West Virginia.  ECF No. 24-16.  On appeal, the Petitioner asserted that the circuit court erred in denying his habeas petition, asserting six claims for relief. Id. at 2.  Five of those claims asserted that Petitioner received ineffective assistance of counsel as related to counsel's failure to: (1) seek a change of venue based on pretrial publicity [Id. at 11]; (2) investigate grand jury testimony [Id. at 13]; (3) impeach a state witness [Id. at 14]; (4) investigate an alibi [Id. at 15]; and (5) call rebuttal expert witnesses [Id. at 16].  Plaintiff's sixth claim was that the trial court gave improper jury instructions. Id. at 17.

By unpublished memorandum decision issued August 27, 2021, the Supreme Court of Appeals affirmed the July 31, 2020, order of Harrison County Circuit Court which denied Petitioner habeas corpus relief.   See Bouie v. Ames No. 20-0660, 2021 WL 3833862 (W.Va. August 27, 2021).

###### C.      Instant Federal Habeas Petition

In his § 2254 petition filed herein on September 29, 2021, Petitioner articulates four grounds for relief.  ECF No. 2.  However, a review of those claims shows that claims 3 and 4 contain subparts so that Petitioner actually raises eight grounds for relief:

(1) **Ground 1.** Petitioner's right to confrontation under the Sixth Amendment was violated by the trial court when it admitted his co-defendant's confession [ECF No. 2 at 6];

(2) **Ground 2.** Petitioner's Rights under the Fifth and Sixth Amendment were violated when the trial court admitted Petitioner's alleged statements made to the investigating officer [Id. at 8];

(3) **Ground 3(a).** Petitioner's due process rights under the Sixth Amendment were violated when the trial court admitted exemplar footwear evidence [Id. at 10];

(4) **Ground (3)(b).** Petitioner's due process rights under the Sixth Amendment were violated when the trial court admitted lay opinion testimony of the investigating officer regarding the exemplar shoes in violation of the rules of evidence [Id.];

(5) **Ground 4(a).** Petitioner's due process rights under the Sixth Amendment were violated when his attorneys provided ineffective assistance of counsel by failing to move for a change of venue based upon prejudicial pre-trial publicity due to the lack of adequate investigation of the issue by trial counsel [Id. at 12];

(6) **Ground 4(b).** Petitioner's counsel was ineffective when counsel failed to impeach state witness Aaron Carey [Id. at 12 – 13];

(7) **Ground 4(c).** Petitioner's counsel was ineffective when counsel failed to investigate an alibi [Id. at 13]; and

(8) **Ground 4(d).** Petitioner's counsel was ineffective when counsel failed to call rebuttal expert witness [Id. 13 – 14].

Petitioner requested that the Court remand this case to the Circuit Court of Harrison County, West Virginia, for a new trial.  Id. at 18.  Further, Petitioner requested that should he be denied substantive relief, that the Court issue a Certificate of Appealability.  Id.

Respondent filed a motion to dismiss and for summary judgment, along with a memorandum in support and multiple exhibits, on March 31, 2022.  ECF Nos. 23, 24, 21-1 through 24-17, 25.  In his memorandum, Respondent argues that Petitioner is not entitled to relief because: (1) when Petitioner's co-defendant, Mr. Payne, confessed to Mr. Carey, the confession was non-testimonial in nature, thus the trial court's admission of the confession did not violate Petitioner's right to confrontation under the Sixth Amendment [ECF No. 25 at 10 – 12]; (2) Petitioner's right to counsel under the Fifth and Sixth Amendment was not implicated when Petitioner initiated a conversation with Sgt. Cox while Cox transported Petitioner, because formal charges had not been brought[4] [Id. at 12 – 14]; (3) Petitioner's claims that he was denied due process when the trial court admitted exemplar footwear evidence and attendant lay opinion testimony of the investigating office in violation of the Rules of Evidence, is procedurally barred from this Court's review because Petitioner failed to exhaust his state remedies as to this claim. [Id. at 15 – 20]; and (4) Petitioner has not demonstrated ineffective assistance of counsel pursuant to the two-pronged standard articulated in Strickland v. Washington, 466 U.S. 668 (1984), because: (a) counsel contemplated pretrial publicity concerns, but determined it was in Petitioner's best interest to remain in Harrison County for trial [Id. at 24 – 25]; (b) trial counsel's questioning of witness Carey did not rise to the level of

---

[4]  This argument is consistent with the holding of State v. Bouie, 776 S.E.2d at 613 – 14, where the West Virginia Supreme Court of Appeals found that Petitioner's Sixth Amendment right to counsel was not implicated because formal charges had not been filed against Petitioner at the time he initiated conversation with Sgt. Cox.  ECF No. 25 at 13.

deficient performance, and even if it did, Petitioner cannot demonstrate that the result of his trial would have been different [Id. at 25 – 26]; and (c) Petitioner failed to demonstrate that counsel was constitutionally deficient for failure to investigate an alibi, because Petitioner did not provide counsel with an alibi defense, only that Petitioner was present at the victim's home, but did not get out of the car or go into the victim's residence with Payne[5] [Id. at 26 – 27].

Petitioner filed a response and exhibits in opposition to Respondent's motion to dismiss and motion for summary judgment on June 27, 2022.  ECF Nos. 36, 36-1 through 36-3.[6]  In his response, Petitioner contends that: (1) he exhausted[7] all of his grounds for relief; (2) the state court decisions were contrary to or an unreasonable application of federal law; and (3) the state court decisions were based on an unreasonable determination of the facts.  ECF No. 36 at 4.

More specifically, petitioner addresses each of his grounds for relief.  As to his first ground, Petitioner contends that his case was severed from that of his co-defendant, Payne, to keep Payne's behaviors and statements from prejudicing Petitioner at his trial. Id. at 7.  Further, Petitioner argues that reliance on the hearsay exception was effectively an "end around the Confrontation Clause."  Id. at 8.  Petitioner contends that the cases

---

[5]  Respondent argued the "West Virginia Supreme Court of Appeals found that Petitioner's claim not only contradicted the State's circumstantial evidence placing Petitioner at the scene . . . but contradicted the Court's prior finding . . . that Petitioner 'placed himself in the physical vicinity of the murder by admitting that he walked around the victim's apartment complex.' "  ECF No. 25 at 27, quoting *Bouie II*, 2021 WL 3833862 at *3.

[6]  Petitioner's exhibits were: (1) the 71-page police report for the first-degree murder of Jayar Poindexter [ECF No. 36-1]; (2) a copy of West Virginia Rules of Evidence 401, 402, and 701, and Federal Rules of Evidence 401, 402, and 701 [ECF No. 36-2]; and (3) a copy of the dissenting opinion in Petitioner's direct appeal, State v. Bouie, 235 W.Va. 709, 776 S.E.2d 606 (2015).

[7]  Petitioner further asserts that Respondent concedes that his grounds 1, 2, and 4 are both exhausted and timely.  ECF No. 36 at 4.

cited by Respondent all involve statements by defendants, not by co-defendants, making all those authorities distinguishable.  Id. at 8 – 9.

Petitioner further argues in his second ground for relief that he "was arrested and jailed in Pennsylvania, taken into custody by a West Virginia police officer in the foreign state of Pennsylvania, transported back to West Virginia and processed on charges of robbery, murder, and conspiracy, and then transported to the regional jail without ever being Mirandized."  Id. at 10.  Petitioner asserts that when he made inculpatory statements to the West Virginia police officer, Cox, he had already been formally charged and was in custody, thereby triggering a mandatory Miranda warning that "any statements he [ ] made could be used against him at trial."  Id. at 11.  Petitioner cites to a pre-trial ruling by the circuit court which recognized that Petitioner's right to counsel had already attached.  Id. at 12, n. 3.

As to Petitioner's third claim [Claims 3(a) and 3(b)], regarding footwear exemplar evidence, Petitioner contends he properly exhausted those issues in state court before seeking federal habeas relief.  Id. at 13.  Petitioner asserts that although the brief heading which his counsel filed with the Supreme Court of Appeals of West Virginia stated that the footwear exemplar ground rested on a violation of the Rules of Evidence, the body of the brief addressed how Petitioner's Sixth Amendment rights were also violated.  Id. at 14 – 17.  Further, Petitioner contends that any failure to exhaust these issues in state court demonstrated ineffective assistance of counsel in those proceedings.  Id. at 17 – 18.

In his argument on his fourth claim [Claims 4(a) through 4(d)], Petitioner contends he received ineffective assistance of counsel in four instances, when counsel: (1) failed

8

to seek " 'a change of venue study' despite his knowledge of the substantial media coverage", and that such a failure demonstrated the inadequacy of counsel's investigation [ECF No. 36 at 20]; (2) failed to impeach, sufficiently question, or otherwise investigate state witness Aaron Carey whose testimony was used to admit an inculpatory out of court statement by Petitioner's co-defendant [Id. at 21 – 23]; (3) failed to call a rebuttal expert witness[8] [Id. at 23 – 24].

On September 30, 2022, the undersigned filed a report and recommendation.  ECF No. 39.  Petitioner filed an objection to the report and recommendation on October 24, 2022.  ECF No. 41.  By order entered February 16, 2023, the District Court declined to adopt the report and recommendation, and recommitted the matter to the undersigned for further consideration consistent with the Court's order.  ECF No. 42.

On February 27, 2023, Petitioner filed a motion for appointment of counsel.  ECF No. 43.

### III.    LEGAL STANDARD

### A.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a

---

[8]  Petitioner contends variously that such a rebuttal witness should have countered the credibility of Sgt. Cox' testimony [ECF No. 36 at 24]; and that such a rebuttal witness would not have been called to rebut the State's experts [Id. at 24, n. 11].

defendant who is immune from such relief.  A complaint is frivolous if it is without arguable merit either in law or in fact.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[9] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

**B.    Petitions for Relief Under 28 U.S.C. § 2254**

All petitions for habeas corpus relief under § 2254 are subject to a strict one-year period of limitation, based on the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Further, pursuant to Rule 3, of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he time for filing a petition is governed by 28 U.S.C. § 2244(d)."   That statute provides that:

> **(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[9]  The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Substantively, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper.  Under 28 U.S.C. § 2254(a) a district court must entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

A petitioner can only seek § 2254 relief if he has exhausted the remedies available in state court, the corrective process is not available in state court, or the state process is ineffective to protect the petitioner.  28 U.S.C. § 2254(b).  Moreover, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The statute, 28 U.S.C. § 2254, further addresses when a writ of habeas corpus shall not be granted to a state prisoner:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

11

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

See also Williams v. Taylor, 529 U.S. 362 (2000).  "By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)."  Harrington v. Richter, 562 U.S. 86, 98, 131 S.Ct. 770, 784 (2011).

> This standard . . . is difficult to meet.  Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.  Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

White v. Woodall, 572 U.S. 415, 419 – 20, 134 S. Ct. 1697, 1702 (2014) (cleaned up).

Further, the Supreme Court has recognized that while the 1996 enactment of the AEDPA, including 28 U.S.C. § 2254:

> Announced certain new conditions to relief, it did not guarantee relief upon their satisfaction.  Instead, Congress left intact the equitable discretion traditionally invested in federal courts by preexisting habeas statutes.  So even a petitioner who prevails under AEDPA must still today persuade a federal habeas court that "law and justice require" relief. . . . Today, then, a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either of this Court's equitable precedents or AEDPA.  But to *grant* relief, a court must find that the petitioner has cleared both tests.

Brown v. Davenport, __ U.S. __, 142 S.Ct. 1510, 1524 (2022).

The statute also fully addresses factual determinations made in state court:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e).

A claim is generally considered to have been "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application clauses of § 2254(1)(d) have separate and independent meanings. Williams v. Taylor, 529 U.S. 362, 364 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 US at 405) (internal quotations omitted). A writ of habeas corpus may be granted under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." Id. at 300 - 301 (internal marks omitted). Therefore, the AEDPA limits the habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision.

### C.   Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test to determine whether counsel was constitutionally

ineffective.   Under the first prong, Petitioner must demonstrate that his counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984).  But "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense assistance after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.  In addition, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance.  Id. at 689-90.  There are no absolute rules for determining what performance is reasonable.  See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (noting counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Under the second prong, Petitioner must show that the deficient performance caused him prejudice.  Strickland, 466 U.S. at 687.  To show prejudice, Petitioner must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart v. Fretwell, 506 U.S. 364, 369 (1993) (quoting Strickland, 466 U.S. at 687 (1984)).  Consequently, if counsel's errors have no effect on the judgment, the conviction should not be reversed.  Strickland, 466 U.S. at 691.  The Fourth Circuit has recognized that, if a defendant "cannot demonstrate the requisite prejudice, [then] a reviewing court need not consider the performance prong" and vice versa.  Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992).

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove  no set of facts  in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 – 21 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's  obligation in pleading, "requires  more than  labels and  conclusions, and  a formulaic recitation of the elements of a cause of action will not do...."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to  raise  a right  to  relief  above  the  speculative level," to one that is "plausible on its face."  Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have  not nudged their claims  across  the line from conceivable to plausible, their complaint must be dismissed."  Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009).   Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678.   "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.  Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).   In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.    Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 – 23 (1986).  However,

"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  <u>Anderson</u>, <u>supra</u>, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial."  <u>Id.</u>  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  <u>Id.</u>   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must

consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88.  Anderson, supra, at 248-49.

## IV.   ANALYSIS

### A.   Petitioner's Grounds Have All Been Previously Raised and Adjudicated in State Court

Petitioner is not entitled to relief because he seeks the writ of habeas corpus upon eight grounds which have all previously been raised and decided by either the West Virginia Supreme Court of Appeals on direct appeal or in that court or in the Circuit Court of Harrison County, West Virginia, in post-conviction proceedings and Petitioner cannot demonstrate that: (1) the adjudication of his claims was contrary to, or involved an unreasonable application of clearly established law, as determined by the Supreme Court; or (2) resulted in an unreasonable determination of the facts.  28 U.S.C. § 2254(d), (d)(1), (d)(2).

18

### 1. Claims Previously Decided in State Court on Direct Appeal

Petitioner's claims 1 through 4 (Grounds 1, 2, 3(a), and 3(b)) were all addressed and adjudicated by the Supreme Court of Appeals of West Virginia in its decision on direct appeal issued June 16, 2015.  State v. Bouie, 235 W.Va. 709, 776 S.E.2d 606 (2015). These grounds are all based on the trial court's evidentiary rulings which admitted into evidence: (1) a third party's testimony, pursuant to the hearsay exception, about a statement made by Petitioner's co-defendant; (2) Petitioner's own statement to law enforcement; (3) demonstrative evidence; and (4) lay opinion testimony regarding the demonstrative evidence.

### 2. Claims Previously Decided in State Court Habeas Corpus Proceedings

Petitioner's ineffective assistance of counsel claims raised in Claims 5 through 8 (Grounds 4(a) through 4(d)) were addressed and rejected by the Harrison County Circuit Court in case number 15-C-433, and the Supreme Court of Appeals in a post-conviction proceeding, Bouie v. Ames, 2021 WL 3833862 (W. Va. Aug. 27, 2021).  Moreover, Petitioner acknowledges that he has previously raised these claims, and that they were previously adjudicated in state court.  ECF No. 2 at 12 - 15.

Although Petitioner nominally asserts that his claims meet the two exceptions contained in the statute, and argues that the State court decisions were based on an unreasonable application of, or contrary to clearly established federal law, or were based on an unreasonable determination of the facts, the undersigned finds that Petitioner's contentions are without merit as to any of his eight claims.  Petitioner has failed to provide anything other than conclusory statements tracking the code language without any factual support for his claims.  He has failed to articulate any basis for his contentions that the

19

decisions of the State court with regard to any issue were contrary to established Federal law or an unreasonable application of the facts.  Accordingly, there is no basis on which relief should be granted.

**B.    Petitioner Cannot Meet Either of the Two Exceptions in § 2254 as to Any of His Eight Claims**

Because all eight of Petitioner's claims have previously been adjudicated, relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court", unless Petitioner can meet one of the two exceptions in 28 U.S.C. § 2254.  The first of the exceptions provides that relief may be merited if the state adjudication of the claim, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In Petitioner's response to the motion to dismiss, he makes a blanket statement that all "[t]he State Court decisions were contrary to, and involved an unreasonable application of clearly established Federal law" and "were based on an unreasonable determination of the facts."  ECF No. 36 at 4.  However, in his response Petitioner did not explain **how** the state court decision was contrary to or involved an unreasonable application of federal law, or **how** the state court decision was based on an unreasonable determination of the facts for any of his claims.[10]   The undersigned finds that none of the challenged State court decisions from direct appeal and habeas corpus appeal were contrary to, or involved an unreasonable application of clearly established federal law.

---

[10]  In his objection [ECF No. 41] to the first Report and Recommendation [ECF No. 39], Petitioner concedes that his response [ECF No. 36] made "a general assertion that the State court decisions were unreasonable and/or contrary to clearly established Federal law."  ECF No. 41 at 6.  Again, Petitioner does not explain how or why he believes his "general assertion" entitles him to habeas corpus relief under § 2254.

Further, the undersigned finds that those State court decisions were not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

### 1.   Ground 1: Sixth Amendment Confrontation Clause Violation

Petitioner asserted in Claim 1 (Ground 1) that his Sixth Amendment Confrontation Clause rights were violated when the trial court permitted a witness, Carey, to testify that that Petitioner's co-defendant, Payne, "confided having 'shot somebody in a robbery'" two days after the victim was killed.  ECF No. 2 at 6; State v. Bouie, 235 W.Va. at 717 – 18, 776 S.E.2d at 614 – 15.  The West Virginia Supreme Court of Appeals explained that:

> The Confrontation Clause of the Sixth Amendment "bars the admission of a testimonial statement by a witness who does not appear at trial, unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness." . . . .  It is undisputed that Payne rendered himself unavailable by the valid invocation of his Fifth Amendment privilege.
>
> . . . .
>
> We agree with the circuit court's ruling that Payne's statements were not testimonial, insofar as they were "made in Mr. Carey's living room and during a friendly conversation." No objective witness in Payne's position could have reasonably believed that he was making any statements for purposes of a trial. Under such circumstances, Bouie's asserted Sixth Amendment right to confront and cross-examine Payne is not implicated. Payne's statements therefore needed only to satisfy "a firmly rooted hearsay exception" in order to be properly admitted through Carey.

235 W. Va. at 718, 776 S.E.2d at 615.[11]  In his Response to the motion to dismiss, Petitioner further disputes the legal analysis of the Supreme Court of Appeals on this

---

[11]   The trial Court instructed the jury, "Ladies and gentlemen, at this time the Court is going to give you what's known as a cautionary instruction.  'Normally hearsay evidence is not admissible.  However,

issue.  ECF No. 36 at 8 – 9.  Although Petitioner contends that the admission of Carey's testimony was improper, he does not explain **how** this state court decision was contrary to or involved an unreasonable application of federal law, or resulted in unreasonable determination of the facts.[12]  ECF No. 36 at 7 – 9.

Respondent contends that the State court decision on this issue was consistent with the rulings of the Supreme Court of the United States in <u>Crawford v. Washington</u>, 541 U.S. 36, 53 – 54 (2004), and <u>Giles v. California</u>, 554 U.S. 353, 358 (2008).  ECF No. 25 at 10.   <u>Crawford</u> held that out of court "testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541 U.S. at 59.  However, the Supreme Court has further held that, "under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. <u>Ohio v. Clark</u>, 576 U.S. 237, 245, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015).  In Clark, the Supreme Court explained that a number of factors determine whether a statement is testimonial:

> One additional factor is the informality of the situation and the interrogation.  A formal station-house interrogation, like the questioning in *Crawford,* is more likely to provoke testimonial

---

there are certain exceptions.  In this case the Court has declared that Mr. Payne is unavailable as a witness. Nevertheless, under our Rules of Evidence statements that he gave to non-police individuals may be admissible in the trial of the co-defendant."'

ECF No. 24-5 at 145:23 – 146:5.

[12]  Petitioner cites to <u>U.S. v. Cronic</u>, 466 U.S. 648, 656 (1984), to support his Sixth Amendment Confrontation Clause claim, however, that case addresses the right to counsel under the Sixth Amendment, not an exception to the hearsay rule which evades the Confrontation Clause.  A more complete reading of the cited text shows that the Supreme Court wrote, "When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated."  <u>United States v. Cronic</u>, 466 U.S. 648, 656–57, 104 S. Ct. 2039, 2045–46, 80 L. Ed. 2d 657 (1984).

> statements, while less formal questioning is less likely to reflect a primary purpose aimed at obtaining testimonial evidence against the accused. And in determining whether a statement is testimonial, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. In the end, the question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony.

576 U.S. at 245, 135 S. Ct. at 2180 (cleaned up). The Supreme Court concluded that a statement made in Clark by a three-year old child to his preschool teacher "clearly were not made with the primary purpose of creating evidence for Clark's prosecution. Thus, their introduction at trial did not violate the Confrontation Clause." 576 U.S. at 246, 135 S. Ct. at 2181.

Here, the State court permitted Carey to testify about a statement made by Petitioner's co-defendant, which statement was made during a conversation in "Carey's living room and during a friendly conversation." 235 W.Va. at 718, 778 S.E.2d at 615. The Supreme Court of Appeals ruled that "[n]o objective witness in [the co-defendant's] position could have reasonably believed that he was making any statements for purposes of a trial." Id. That conclusion of the West Virginia Supreme Court of Appeals in Petitioner's direct appeal was not contrary to or an unreasonable application of Supreme Court precedent from Crawford, Giles, Clark or their progeny. Nor was that decision based on an unreasonable determination of the facts.

Accordingly, Petitioner's first claim as to the alleged violation of his Sixth Amendment Confrontation Clause rights, does not meet either exception listed in the statute. For all of the above reasons, Petitioner's first claim for relief is without merit and should be denied.

23

> ### 2. Ground 2: Fifth and Sixth Amendment Right to Counsel Violation Based on Admission of Petitioner's Statements to Officer Cox

In Claim 2 (Ground 2), Petitioner asserted that his statement made to law enforcement should not have been admitted at trial because the statement violated his right to counsel, as guaranteed by the Fifth and Sixth Amendments.  ECF No. 2 at 8 – 9. Petitioner contends that his statement was a custodial statement because it was made during a three-and-a-half-hour drive from Butler County, Pennsylvania to Clarksburg, West Virginia, without the officer giving Petitioner <u>Miranda</u> warnings.  ECF Nos. 2 at 8, 36-1 at 70.  In its opinion rejecting this claim on direct appeal, the Supreme Court of Appeals wrote that:

> No view of the facts as presented here could support the notion that Sergeant Cox initiated the conversation that led Bouie to make the incriminating statements admitted against him at trial. With no prompting and in a completely spontaneous manner, Bouie asked Sergeant Cox for a copy of the criminal complaint against him. Sergeant Cox wordlessly complied with the request, having no reason to know or even suspect that doing so would cause Bouie to express confusion regarding the complaint, thereby indirectly admitting his presence on the premises and, in turn, confirming his role in Poindexter's death. . . Absent any indication of the improper police influence described in [*State v.*] *Guthrie [205 W.Va. 326, 343, 518 S.E.2d 82, 100 (1999)]*, we are likewise compelled to conclude here that Bouie's statements to Sergeant Cox were voluntarily made, and thus properly admitted into evidence.

235 W. Va. at 717, 776 S.E.2d at 614.  The West Virginia Supreme Court of Appeals further cited to both state and federal law to support its conclusion that <u>Miranda</u> warnings

are not required unless a subject is both taken into custody and subjected to custodial interrogation which is initiated by law enforcement.[13] Id.

Moreover, in his petition Petitioner did not articulate any grounds that would support relief under the "contrary to" or "unreasonable determination" exceptions found in subparagraphs (1) and (2) of § 2254 as relates to his second ground for relief.  ECF No. 2 at 8 – 9.  In Petitioner's response to the motion to dismiss, although he contends that the admission of his statement to Cox was improper, he again did not address the "contrary to" or "unreasonable determination" exceptions as they relate to his statement. ECF No. 36 at 9 – 13.  As noted above, in that document he instead makes a blanket statement that all "[t]he State Court decisions were contrary to, and involved an unreasonable application of clearly established Federal law" and "were based on an unreasonable determination of the facts."  Id. at 4.   Again, although Petitioner contends that the admission of his statement to Officer Cox was improper, he does not explain *how* this state court decision was contrary to or involved an unreasonable application of federal law.

---

[13]   In Bouie, 235 W. Va. at 717, 776 S.E.2d at 614, the Supreme Court of Appeals cited to the following:

It is undisputed that Sergeant Cox had not informed Bouie of his Fifth Amendment rights in conformance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Nevertheless, " 'the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation.' " *Damron v. Haines,* 223 W.Va. 135, 141, 672 S.E.2d 271, 277 (2008) (quoting *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)). The *Miranda* Court made clear, however, that "interrogation ... mean[s] questioning *initiated by law enforcement officers* after a person has been taken into custody." 384 U.S. at 444, 86 S.Ct. 1602 (emphasis added); *see State v. Kilmer,* 190 W.Va. 617, 625, 439 S.E.2d 881, 889 (1993) (reciting that interrogation has been defined as " 'express questioning ... [or] any words or actions *on the part of the police* ... that the police should know are reasonably likely to elicit an incriminating response from the suspect' " (quoting *Innis,* 446 U.S. at 301, 100 S.Ct. 1682) (emphasis added)).

Respondent contends that the State court decision on this issue was consistent with the rulings of the Supreme Court of the United States in <u>Texas v. Cobb</u>, 532 U.S. 162 (2001), <u>McNeil v. Wisconsin</u>, 501 U.S. 171 (1991), <u>Moran v. Burbine</u>, 475 U.S. 412 (1986), and <u>Rhode Island v. Innis</u>, 446 U.S. 291 (1980).   ECF No. 25 at 12 – 14. According to Respondent, the Supreme Court has held that the right to counsel attaches when "a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."  <u>Texas v. Cobb</u>, 532 U.S. at 167 – 68, quoting <u>McNeil</u>, 501, U.S. at 175.   Further, as noted by Respondent, for the right to counsel to be implicated a defendant must, "at a minimum, [make] some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police."* <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 178, 111 S. Ct. 2204, 2209, 115 L. Ed. 2d 158 (1991) (emphasis in original).   Respondent also argues that the holding of <u>Innis</u> applies to Petitioner's spontaneous statement to Cox.  In <u>Innis</u>, the Supreme Court held that:

> Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. *The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.* . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

<u>Rhode Island v. Innis</u>, 446 U.S. 291, 299–300, 100 S. Ct. 1682, 1689, 64 L. Ed. 2d 297 (1980) (emphasis in original).

Here, Petitioner made a voluntary statement to Cox while Cox transported him to jail.   Consistent with the Supreme Court's ruling in <u>Innis</u>, the issue for Petitioner is not

whether he was given <u>Miranda</u> warnings while in custody, but whether he was interrogated by police without the benefit of those warnings and counsel.  Petitioner's voluntary statement[14] was not based on any interrogation, but on his own request to see a copy of the criminal complaint, followed by his own spontaneous questions and declaration.  The Supreme Court of Appeals in its published opinion affirming Petitioner's conviction recited this conversation before ruling on the applicability of the Fifth and Sixth Amendment to Petitioner's statement:

> No view of the facts as presented here could support the notion that Sergeant Cox initiated the conversation that led Bouie to make the incriminating statements admitted against him at trial. With no prompting and in a completely spontaneous manner, Bouie asked Sergeant Cox for a copy of the criminal complaint against him. Sergeant Cox wordlessly complied with the request, having no reason to know or even suspect that doing so would cause Bouie to express confusion regarding the complaint, thereby indirectly admitting his presence on the premises and, in turn, confirming his role in Poindexter's death. *Cf. State v. Guthrie,* 205 W.Va. 326, 343, 518 S.E.2d 83, 100 (1999) (concluding that no interrogation of defendant occurred during transport to police headquarters, in that the record failed to "suggest[ ] any subtle or overt coercive tactic being used by the police for the purpose of intimidating Mr. Guthrie into talking and incriminating himself"). Absent any indication of the improper police influence described in *Guthrie,* we are likewise compelled to conclude here that Bouie's statements to Sergeant Cox were voluntarily made, and thus properly admitted into evidence.

<u>State v. Bouie</u>, 235 W. Va. 709, 717, 776 S.E.2d 606, 613 – 14  (2015).  That conclusion of the West Virginia Supreme Court of Appeals in Petitioner's direct appeal was not contrary to or an unreasonable application of Supreme Court precedent in <u>Cobb</u>, <u>McNeil</u>,

---

[14] "[I]t is easy to imagine many situations in which an un-*Mirandized* suspect in custody may make self-incriminating statements without any hint of compulsion."  <u>Vega v. Tekoh</u>, __ U. S. __, 142 S. Ct. 2095, 2101 (2022).

<u>Innis</u>, or their progeny.  Petitioner was not subject to custodial interrogation when he made his spontaneous inculpatory statements.  Further, Petitioner did not indicate any desire for counsel when he made his statements to Cox.  Thus, Petitioner's rights to counsel were not implicated, and the decision of the Supreme Court of Appeals on that issue was not based on an unreasonable determination of the facts.

Accordingly, Petitioner's second claim as to the alleged violation of his Fifth and Sixth Amendment rights to counsel, does not meet either exception listed in the statute. For all of the above reasons, Petitioner's second claim for relief is without merit and should be denied.

### 3.    Ground 3(a): Sixth Amendment Due Process Violation Based on Admission of Exemplar Footwear Evidence

Petitioner's Claim 3 (Ground 3(a)) challenges the admission of exemplar footwear evidence as a violation of his Sixth Amendment Due Process rights.   ECF No. 2 at 10. Respondent contends that Petitioner procedurally defaulted this claim by failing to exhaust it on the grounds raised herein.  "He did not allege before the WVSCA that the trial court's admission of the exemplar footwear evidence violated his right to due process as he does herein."  ECF No. 25 at 15.

In his response to the motion to dismiss, Petitioner argues that his appellate counsel stated that "Petitioner submits that the admission of the exemplar shoes and attendant lay opinion testimony of Sgt. Cox clearly placed the underlying fairness of the jury's verdict in doubt."  ECF No. 36 at 15.  Petitioner proffered that his counsel's representation was "an unequivocal statement putting the WVSCA on notice that his Sixth Amendment right to a fair trial was violated."  <u>Id.</u>  In considering Petitioner's challenge to the admission of this evidence under West Virginia Rule of Evidence 701, the Supreme

28

Court of Appeals held, "We have previously observed that '[t]he admission of demonstrative evidence rests largely within the trial court's discretion.' " 235 W. Va. at 719 – 20, 776 S.E.2d at 616 – 17, quoting *Syl. Pt. 14*, State v. Bradshaw, 193 W.Va. 519, 457 S.E.2d 456 (1995).

Petitioner's response to the motion to dismiss further argues that West Virginia Rules of Evidence and Federal Rules of Evidence 401, 402, and 701 are identical, thereby making a violation of those State rules simultaneous violations of the corresponding Federal rules. ECF No. 36 at 15. Petitioner alleges that the admission of the exemplar footwear evidence violated those rules, but fails to explain in what manner the rules were violated.

While it appears to the undersigned that Petitioner has procedurally defaulted this claim, as argued by Respondent, the Court nonetheless considers Petitioner's claims on the merits.[15] To the extent that Petitioner properly raised this claim in his direct appeal or state habeas corpus proceeding, he is prohibited from receiving relief under § 2254, unless he can meet the exceptions under 28 U.S.C. § 2254(d)(1) and (d)(2), which he failed to do. Petitioner does not demonstrate how or why the state court's admission of the exemplar footwear was either "contrary to" or involved an "unreasonable application" of clearly established federal law.

The West Virginia Rules of Evidence, as noted by Petitioner, are based on, or entirely duplicative of the Federal Rules of Evidence. Admission of evidence pursuant to the West Virginia Rules of Evidence, which are patterned on, or completely duplicate the Federal Rules of Evidence was not contrary to or an unreasonable application of Federal

---

[15] Petitioner's procedural default of claims is discussed in section IV.C. below.

law.   Nor does the West Virginia Supreme Court ruling contain an unreasonable determination of the facts.

Thus, Petitioner's third claim is without merit as to the alleged violation of his Fifth and Sixth Amendment right to counsel.   To the extent that the issue has already been considered in State courts, it has been adjudicated on the merits, and does not meet either exception listed in the statute.   Accordingly, Petitioner's third claim for relief is without merit and should be denied.

### 4.   Ground 3(b): Sixth Amendment Due Process Violation Based on Lay Opinion Testimony

In Claim 4 (Ground 3(b)), Petitioner claimed his due process rights were violated when the trial court admitted the lay opinion testimony of the investigating officer related to the exemplar footwear.   ECF No. 2 at 10.   As with his challenge to the admission of the exemplar shoes themselves, this challenge to the trial court's evidentiary ruling was previously raised by Petitioner in his direct appeal with the Supreme Court of Appeals, which petitioner concedes.   ECF Nos. 2 at 10; 24-9 at 38.   However, as with Ground 3(a) above, Respondent argues that this claim is procedurally defaulted because the direct appeal challenge was based on the Rules of Evidence, rather than the Sixth Amendment.

The Supreme Court of Appeals affirmed the evidentiary rulings of the circuit court and found that it did not abuse its discretion in admitting the lay opinion testimony from the investigating officer regarding the exemplar shoes, pursuant to West Virginia Rule of Evidence 701.   235 W.Va. at 720 – 721, 776 S.E.2d at 617 – 618.   Additionally, the Supreme Court of Appeals noted that the jury was given a cautionary instruction[16] during

---

[16]  The circuit court gave the following cautionary instruction to the jury:

the testimony of Sgt. Cox that the exemplar shoes did not belong to Petitioner, and were not recovered from the crime scene.  235 W. Va. at 720, 776 S.E.2d at 617.  Petitioner again conceded that he unsuccessfully raised this issue in his direct appeal.  ECF Nos. 2 at 10; 24-9 at 38.

However, as with Petitioner's other challenges, he again failed to assert in his petition that this ruling permitting lay opinion testimony met either of the exceptions of § 2254(d).  The West Virginia Rules of Evidence, as noted by Petitioner, are based on, or entirely duplicative of the Federal Rules of Evidence.  Admission of evidence pursuant to the state rules was not contrary to or an unreasonable application of Federal law.  Nor did the State court ruling contain an unreasonable determination of the facts.

Accordingly, Petitioner's fourth claim as to the alleged violation of his Fifth and Sixth Amendment right to counsel, to the extent the issue has already been considered in State courts, it has been adjudicated on the merits, and does not meet either exception listed in the statute.  Accordingly, Petitioner's fourth claim for relief is without merit and should be denied.

### 5. Claims 5 Through 8 (Grounds 4(a) Through 4(d): Ineffective Assistance of Counsel

Petitioner asserts that his Sixth Amendment rights were violated when he received ineffective assistance of counsel in four instances, when his counsel: (1) failed to seek a

---

[T]he exemplar shoes utilized by the prosecution during the trial are not actual evidence recovered from the crime scene, nor obtained from either of the defendants charged in this matter. These shoes were merely purchased by the State as a demonstrative aid based solely upon the investigation of Sgt. Josh Cox. They are not Mr. Bouie's shoes. They are not Mr. Payne's shoes, nor do they belong to any of the witnesses. You are instructed that you may consider these [e]xemplar shoes only as a demonstrative aid used by the State in furtherance of its theory of the case, and may lend them no greater weight than that in your deliberations.

State v. Bouie, 235 W. Va. at 720, 776 S.E.2d at 617.

change of venue based on prejudicial pretrial publicity; (2) failed to impeach State witness Carey; (3) failed to investigate an alibi defense; and (4) failed to call a rebuttal expert witness.  ECF No. 2 at 12 – 14.  All of these claims were previously decided by the State court and Petitioner cannot demonstrate that the State court decisions were clearly erroneous or an unreasonable application of the facts to the law as required by 28 U.S.C. § 2254(d)(1) and (d)(2).  All four of Petitioner's claims fail because he cannot meet the test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), to demonstrate that he received ineffective assistance of counsel.  First, Petitioner must show that counsel's performance fell below an objective standard of reasonableness.  Id.  In reviewing the reasonableness of counsel, "judicial scrutiny must be highly deferential." Id. at 689.  Second, if the Court finds that counsel's performance was unreasonable, Petitioner must then demonstrate that he was prejudiced as a result of that performance. Id. at 687.  To demonstrate such prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 669.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome."  Id.

It is not the purpose of this Court to engage in 20/20 hindsight to second-guess trial strategies.  See Strickland, 466 U.S. 668, 680 (1984).  The fact that a petitioner believes that trial counsel should have made certain motions or engage in certain trial tactics does not mean that trial counsel was required to do so.  An unsuccessful defense counsel is not necessarily an ineffective one.  See Id. at, 690.  Even if the Court were to find that counsel was ineffective in some aspect to satisfy the first part of the Strickland test, Petitioner must still demonstrate a reasonable probability of a different outcome to

meet the <u>Strickland</u> test.  However, because Petitioner cannot meet either prong of the

<u>Strickland</u> test, his claims of ineffective assistance of counsel must all fail.

> **a. Claim 5 (Ground 4(a)): Sixth Amendment Due Process Violation Based on Ineffective Assistance of Counsel regarding Change of Venue because of Pretrial Publicity**

In Claim 5 (Ground 4(a)), Petitioner contends that his counsel was ineffective

because counsel failed to challenge pretrial publicity and seek a change of venue before

trial.  ECF No. 2 at 12.  According to Petitioner, there was a "saturation of media coverage,

with prejudicial actions of his co-defendant conflated with [actions of] the Petitioner."  <u>Id.</u>

Petitioner raised this issue previously in his state habeas corpus proceeding.  <u>Id.</u> at 14.

In its review of the circuit court's denial of habeas corpus, the Supreme Court of Appeals

found that:

> [T]rial counsel testified at the omnibus hearing that there was an investigation in the form of the collection of media items from a newspaper and local television stations, and counsel held a mock trial with a jury of approximately fifteen people. Based on discussions with people involved in the mock trial, trial counsel concluded that no information existed that "there was either hostile community sentiment, or that there was such an overwhelming coverage of the case that they had formed an opinion about the facts of the case."

<u>Bouie v. Ames</u>, No. 20-0660, 2021 WL 3833862, at *3 (W. Va. Aug. 27, 2021).  The record

does not contain Petitioner's habeas corpus petition filed in Harrison County Circuit Court,

but it does contain the Harrison County Circuit Court's ruling denying habeas corpus

relief.  ECF No. 24-15.  That ruling addressed Petitioner's claims that there was prejudicial

pretrial publicity, and that his counsel "failed to investigate if any substantial pretrial

publicity could impose on Petitioner's trial."  <u>Id.</u> at 8.  Petitioner raised the same claim in

his appeal to  the Supreme Court of Appeals which affirmed the circuit court, writing:

> Prejudicial pretrial publicity creating a hostile community sentiment constitutes good cause for moving a case to another county; however, the focus "should not be whether the community remembered or heard the facts of the case, but whether the jurors had such fixed opinions that they could not judge impartially the guilt or innocence of the defendant." . . . Based on our review of the omnibus hearing transcript, we conclude that the circuit court did not err in finding that this ineffective assistance claim was unsubstantiated.

Bouie v. Ames, No. 20-0660, 2021 WL 3833862, at *3 (W. Va. Aug. 27, 2021).

The undersigned cannot find that the State court decision was contrary to established Federal law or an unreasonable application of the facts. Petitioner cannot meet the two-part Strickland test. First, Petitioner does not show that counsel's performance fell below an objective standard of reasonableness. Id. Petitioner's trial counsel conducted a mock trial with a jury of 15 people. Based on that mock trial, counsel determined that the mock jurors did not express "hostile community sentiment, or that there was such an overwhelming coverage of the case that they had formed an opinion about the facts of the case." Thus, Petitioner cannot meet the first prong of the Strickland test. Because Petitioner cannot demonstrate that he meets the first prong of the test, the Court need not address whether Petitioner was prejudiced as a result of counsel's performance.

As with Petitioner's other challenges, he again failed to assert in his petition that he meets either of the exceptions of § 2254(d), regarding his claim that he received ineffective assistance of counsel when his counsel failed to move for a change of venue. Thus, under the plain language of the statute, Petitioner's fifth claim that he received ineffective assistance of counsel related to counsel's failure to move for a change of venue based on prejudicial pre-trial publicity, has already been considered in State courts,

adjudicated on the merits, and does not meet either exception listed in the statute.  The West Virginia Supreme Court applied the proper standard, and its decision was not contrary to the holding in <u>Strickland v. Washington</u>.  Nor was the decision an unreasonable determination of the facts.  Accordingly, Petitioner's fifth claim for relief is without merit and should be denied.

> **b.    Ground 4(b): Sixth Amendment Due Process Violation Based on Ineffective Assistance of Counsel regarding Failure to Impeach State Witness Carey**

Petitioner asserts in Claim 6 (Ground 4(b)) that his counsel was ineffective when counsel failed to impeach State witness Carey, to whom Petitioner's co-defendant confessed that he shot somebody.  ECF No. 2 at 12 – 13.

In his state habeas corpus petition, Petitioner challenged the adequacy of his counsel's cross examination of various state witnesses.  The Circuit Court in denying relief, summarized that although counsel testified at the omnibus hearing that he did not question Carey regarding any bias he might have, "Petitioner did not demonstrate how his counsel's litigation strategy was objectively unreasonable under <u>Strickland</u>."  ECF No. 24-15 at 10.  On appeal, the Supreme Court of Appeals considered Petitioner's argument "that trial counsel failed to adequately cross-examine [Carey] . . . the witness through whom Mr. Payne's statement against interest was introduced at petitioner's trial." <u>Bouie v. Ames</u>, No. 20-0660, 2021 WL 3833862, at *4 (W. Va. Aug. 27, 2021).  The Supreme Court of Appeals concluded "that the circuit court properly denied the habeas petition with regard to ineffective assistance of trial counsel."  <u>Bouie v. Ames</u>, No. 20-0660, 2021 WL 3833862, at *4 (W. Va. Aug. 27, 2021).  Applying the Strickland test, the Supreme Court of Appeals held:

> Petitioner does not assert that the men who provided eyewitness testimony against him are among the witnesses who were allegedly inadequately cross-examined. Therefore, even if trial counsel's cross-examinations were deficient as alleged . . . we concur with the circuit court's finding that petitioner failed to show that more robust cross-examinations "would have ultimately altered the jury's verdict in his favor." Accordingly, we conclude that the circuit court properly denied the habeas petition with regard to ineffective assistance of trial counsel.

Bouie v. Ames, No. 20-0660, 2021 WL 3833862, at *4 (W. Va. Aug. 27, 2021).

Petitioner cannot meet the two-part Strickland test.  Petitioner contends that the cross examination of Carey should have been more extensive.  ECF No. 2 at 12 – 13.  Further, Petitioner argues that Carey's statement that "he'd do anything" to bring the victim's killer to justice should have been the subject of impeachment.  Id.  Regardless of whether Petitioner is able to meet the first prong of Strickland and show that counsel's performance in cross examining Carey fell below an objective standard of reasonableness, he cannot meet the second prong of Strickland.  Petitioner cannot demonstrate that the result of the proceeding would have been different based on counsel's alleged unprofessional errors.  The Petitioner's own statement implicated him in the felony murder by placing him at the scene.  As recognized in the state habeas appeal:

> A prior statement petitioner gave to law enforcement was admitted, in which petitioner asked why he was charged with murder when "he was not the shooter." When petitioner was told that he was facing the murder charge "because you guys went up there to break into [the victim's apartment]," he admitted that he was at the victim's apartment complex, stating that "he just walked around the residence."

Bouie v. Ames, No. 20-0660, 2021 WL 3833862, at *1 (W. Va. Aug. 27, 2021).  Petitioner's inculpatory statement given to law enforcement was instrumental in his conviction.

Petitioner conceded that he was not the shooter, but was with the shooter at the victim's apartment complex when the killing occurred, and that he walked around the building at the time.  A more thorough cross examination of Carey, who heard the confession of Petitioner's co-defendant, would not have changed the outcome of Petitioner's trial.  The Supreme Court of Appeals correctly applied the <u>Strickland</u> test to Petitioner's claims in that court.  A review of that decision shows that the State court's decision was not contrary to or involve an unreasonable application of clearly established federal law, or result in a decision that was based on an unreasonable determination of the facts.

For all of the above reasons, Petitioner cannot meet the second prong of <u>Strickland</u>, or meets either of the exceptions of § 2254(d), regarding his claim that he received ineffective assistance of counsel when his counsel failed to impeach Carey. Accordingly, Petitioner's sixth claim for relief is without merit and should be denied.

### c. Ground 4(c): Sixth Amendment Due Process Violation Based on Ineffective Assistance of Counsel regarding Failure to Investigate Alibi Defense

In Claim 7 (Ground 4(c)), Petitioner contends that his counsel was ineffective for failing to investigate an alibi defense.  ECF No. 2 at 13.  Petitioner contends that:

> [H]e has always maintained that he did not shoot the victim and did not conspire with anyone to rob the victim.  Despite this, his trial counsel did not investigate nor discuss with him the necessary procedural steps to raise an alibi defense even though he told them he was not there when the victim was shot.  Petitioner wanted to testify and explain to the jury that he was not present when the victim was shot but his trial counsel's failure prevented him from testifying about his whereabouts. . . . [and] trial counsel had a duty to investigate an alibi defense before advising Petitioner not to testify in his own defense.

ECF No. 2 at 13.  Respondent argues that "Petitioner has failed to demonstrate that counsel was constitutionally deficient because Petitioner did not provide counsel with an alibi defense."  ECF No. 25 at 27.  As the Supreme Court of Appeals recognized, Petitioner's own statement placed him in the vicinity of the murder at the time the killing occurred.

Under the Strickland standard, counsel's actions were not objectively unreasonable.  Any attempt to "investigate" that Petitioner was in an alternative location at the time of the killing would have been directly contradicted by Petitioner's own statement to law enforcement.   Accordingly, Petitioner is unable to meet the first prong of Strickland and show that counsel's performance in not investigating an alibi defense fell below an objective standard of reasonableness.

Because Petitioner cannot demonstrate that he meets the first prong of Strickland, the Court need not address the second prong.  Nevertheless, Petitioner cannot meet the second prong of Strickland.  He cannot demonstrate that the result of the proceeding would have been different based on counsel's alleged unprofessional errors.  The Petitioner's own statement placed him at the location of the murder at the time of the killing.  Any attempt by counsel to investigate an alibi defense which contradicted Petitioner's own statement would have been fruitless, and would not have changed the outcome of Petitioner's trial.  Accordingly, Petitioner cannot meet the second prong of Strickland as to this claim.

As with his other claims, Petitioner fails to assert in his pleadings that he meets either of the exceptions of § 2254(d), regarding his claim that he received ineffective assistance of counsel when his counsel failed to investigate an alibi defense.  Further, a

review of the State court decision shows that the decision was not contrary to or involve an unreasonable application of clearly established federal law, or result in a decision that was based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's seventh claim that he received ineffective assistance of counsel related to counsel's failure to investigate an alibi defense, has already been considered in State courts, adjudicated on the merits, and does not meet either exception listed in the statute.   Accordingly, Petitioner's seventh claim for relief is without merit and should be denied.

> **d.    Ground 4(d): Sixth Amendment Due Process Violation Based on Ineffective Assistance of Counsel regarding Failure to Call Rebuttal Expert Witness**

In Petitioner's final claim for relief, Claim 8 (Ground 4(d)), he asserts that counsel's failure to call a rebuttal expert witness to counter the conclusions of the State's witness related to the exemplar shoes constituted ineffective assistance of counsel.  ECF No. 2 at 13 – 14.

The Supreme Court of Appeals addressed this identical issue in Petitioner's habeas corpus appeal in that tribunal:

> Petitioner next argues that trial counsel was ineffective in failing to have the defense's shoe expert testify at trial notwithstanding trial counsel's testimony at the omnibus hearing that the defense was able to "get the same testimony out of the State's witnesses[.]" We find that trial counsel's testimony is confirmed by our findings in *Bouie* that (1) the circuit court gave a cautionary instruction stating that the exemplar sneakers were not actual evidence, were not petitioner's shoes, and were not obtained from either him or Mr. Payne; (2) the investigating officer and the State's two expert witnesses testified that the example sneakers were not obtained from petitioner and/or did not belong to him; and (3) the State's experts "could not ... say with any certainty that the sneakers [petitioner] wore on the night in question were Nike

> Air Force Ones or that the brand left the footwear impressions, and, significantly, [the investigating officer] was not permitted to testify to those connections, either." *Id.* at 719-21, 776 S.E.2d at 616-618. In light of our findings in *Bouie*, we conclude that the circuit court did not err in rejecting this ineffective assistance claim.

Bouie v. Ames, No. 20-0660, 2021 WL 3833862, at *3 (W. Va. Aug. 27, 2021) (citing 235 W.Va. at 719 – 21, 776 S.E.2d at 616 – 618).

Even though the state court has already ruled on the merits of Petitioner's claim, if that same claim was considered on the merits here, the undersigned reaches the same conclusion as the state court that Petitioner cannot meet the two-part Strickland test on this ground.

First, Petitioner cannot demonstrate that counsel's decision not to call rebuttal expert testimony fell below an objective standard of reasonableness.   Counsel determined that the lay opinion testimony about exemplar shoes did not require rebuttal by expert testimony.   However, counsel had obtained rebuttal testimony in the event counsel determined it necessary.   Bouie v. Ames, No. 20-0660, 2021 WL 3833862, at *3.

The Supreme Court has long recognized that:

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is "strongly presumed" to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.

Yarborough v. Gentry, 540 U.S. 1, 8, 124 S. Ct. 1, 5–6, 157 L. Ed. 2d 1 (2003).   "A defendant is bound by the tactical decisions of competent counsel."   Reed v. Ross, 468 U.S. 1, 13, (1984) (Citing Wainwright v. Sykes, 433 U.S. 72, 91, and n. 14 (1977); Henry v. Mississippi, 379 U.S. 443, 451 (1965)).

Counsel made a tactical decision to focus on some issues, to the exclusion of other issues favored by Petitioner.   Counsel determined that it was not helpful to Petitioner's case to present expert testimony to rebut lay opinion testimony about shoes that may have been similar to shoes worn by someone at the scene.   That decision is strongly presumed to have been made in the exercise of professional judgment, and accordingly, counsel's performance in this regard did not fall below an objective standard of reasonableness.   Accordingly, Petitioner is unable to meet the first prong of Strickland and show that counsel's performance in not presenting rebuttal testimony on this issue fell below an objective standard of reasonableness.   Moreover, there was no reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.   Petitioner's own statement to law enforcement placed him at the scene of the killing, when he admitted that he walked around the victim's building.   The type of shoes that Petitioner wore were irrelevant to the fact of his presence. Accordingly, Petitioner cannot meet the second prong of Strickland.

Finally, as with Petitioner's other challenges, he again failed to assert in any of his pleadings that he meets either of the exceptions of § 2254(d), regarding his claim that he received ineffective assistance of counsel when his counsel failed to present rebuttal expert witness testimony.   Further, a review of the State court decision shows that the decision was not contrary to or involve an unreasonable application of clearly established

federal law, or result in a decision that was based on an unreasonable determination of the facts.

Thus, under the plain language of § 2254, Petitioner's eighth claim that he received ineffective assistance of counsel related to counsel's failure to present rebuttal expert witness testimony, has already been considered in State courts, adjudicated on the merits, and does not meet either exception listed in the statute. Accordingly, Petitioner's eighth claim for relief is without merit and should be denied.

**C.    Claims Which Were Procedurally Defaulted**

To the extent that Petitioner raises any issues, which relate to alleged errors in his trial, but which were not raised on direct appeal, or in post-conviction proceedings, he is not entitled to relief on any such claims.

Such a failure to raise those issues on direct appeal precludes relief through habeas proceedings. "Habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " Bousley v. United States, 523 U.S. 614, 621, 118 S. Ct. 1604, 1610 (1998) (quoting Reed v. Farley, 512 U.S. 339, 354, 114 S.Ct. 2291, 2300 (1994), and Sunal v. Large, 332 U.S. 174, 178, 67 S.Ct. 1588, 1590-1591 (1947)). Accordingly, Petitioner's claims were either already raised in the state court, or were procedurally defaulted by failure to raise those claims in state court. In either case, this Court may not grant Petitioner relief. Failure to exhaust any argument in state court prior to presentment of the same issue in federal court is fatal to a petition for habeas corpus under § 2254.

In Baldwin v. Reese, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349 (2004), the Supreme Court held that to, "provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to

42

the federal nature of the claim."  Accordingly, a petition for writ of habeas corpus on behalf of a prisoner in State custody should not be entertained by a federal court unless the petitioner has first exhausted his state remedies.

Regardless of whether Petitioner exhausted his remedies, to the extent that Petitioner asserts any grounds that he did not raise on direct appeal, Petitioner is not entitled to relief because those grounds are now procedurally defaulted for not raising those issues on direct appeal.  Accordingly, for all the above reasons, it is inappropriate for this Court to entertain the Petitioner's federal habeas petition sought under 28 U.S.C. § 2254(d), and the petition should be dismissed with prejudice.

## V.   RECOMMENDATION

For the reasons set forth in this opinion, it is **RECOMMENDED** that the petition [ECF No. 2] for habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** and should thereafter be dismissed from the docket and Petitioner's request for Certificate of Appealability should be **DENIED**.  It is further **RECOMMENDED** that Respondent's motions to dismiss or for summary judgment [ECF Nos. 23, 24] should be **GRANTED**.  Finally, it is **RECOMMENDED** that Petitioner's motion for appointment of counsel [ECF No. 43] be **DENIED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages,

including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED:        March 10, 2023

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE

44